# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER BOOTH,<br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF CORRECTION,<br>et al.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CASE NO. 3:19-cv-100 (MPS)<br><br><br><br><br>February 25, 2019 |

## INITIAL REVIEW ORDER

Plaintiff Christopher Booth, currently incarcerated at the Carl Robinson Correctional Institution in Enfield, Connecticut, filed this case under 42 U.S.C. § 1983. He contends that the supervisory defendants created an environment that discouraged his efforted to report violations of the Prison Rape Elimination Act ("PREA"), defendant Aubey denied him a legal call, and defendant Maldonado subjected him to a sexually hostile environment. The plaintiff seeks damages as well as declaratory and injunctive relief.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis*.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court must construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006). To plead a cognizable legal claim, however, a *pro se* plaintiff must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

I.  Allegations

   A.  Background

In late 2012, the plaintiff was housed at MacDougall-Walker Correctional Institution ("MacDougall"). ECF No. 1, § 12. His cellmate, an inmate he knew as Cobbs, was serving a ten-year sentence. The plaintiff was unsentenced. His security level was 4 based on the amount of his bond. *Id.*, ¶ 13. When the plaintiff was sentenced to a term of imprisonment of eighteen months, his security level was reduced to 2. *Id.*, ¶ 14.

Cobbs searched the plaintiff's personal effects and learned of the plaintiff's sentence and

reduced security level. *Id.*, ¶ 15. Cobbs became upset and told the plaintiff that he would sexually assault him. *Id.*, ¶ 16. Cobbs grabbed the plaintiff from behind and described what he would do in detail. *Id.*, ¶ 17. The inmates struggled, and Cobbs was unable to complete the assault. *Id.*, ¶18.

The state police were notified. The plaintiff was interviewed once and never learned the result of the investigation. *Id.*, ¶ 19. The plaintiff believes that his file included a notation identifying him as a PREA risk. *Id.*, ¶ 20.

On October 30, 2018, the plaintiff was housed at Willard-Cybulski Correctional Institution ("Willard"). Defendant Maldonado was standing in the entry to the showers staring at the inmates entering the showers in various stages of undress. *Id.*, ¶ 21. He remained there, smiling, for about fifteen minutes. *Id.*, ¶¶ 22-23. When he was leaving the shower area, the plaintiff told defendant Maldonado that his actions were "not OK." *Id.*, ¶ 24.

The plaintiff verbally reported the incident to a correctional officer and the lieutenant on duty. *Id.*, ¶ 26. The following day, he reported the incident to defendant Counselor Aubey and Captain Pittman. *Id.*, ¶ 27. On November 1, 2018, the plaintiff again saw Captain Pittman and submitted a written inmate request to him. *Id.*, ¶ 28. Later in the day, defendant Aubey told him to stop writing about the PREA issue and told the plaintiff he would not be permitted a legal call. *Id.*, ¶ 29. When the plaintiff stated that he would file an administrative remedy, defendant Aubey yelled at him and issued him a disciplinary report. *Id.*, ¶ 30.

Less than an hour later, the plaintiff was in a holding cell surrounded by five correctional officers. *Id.*, ¶ 31. The duty lieutenant told the plaintiff that they would not do anything regarding his PREA complaint. *Id.*, ¶ 32. The plaintiff was strip-searched and transported to

3

Carl Robinson Correctional Institution ("Robinson") to serve seven days in the restrictive housing unit ("RHU"). *Id.*, ¶ 33.

Upon arrival at Robinson, the plaintiff told the intake officer about the incident at Willard. The officer contacted Lieutenant Greeves who interviewed the plaintiff and stated that the incident required investigation. *Id.*, ¶ 34. The plaintiff was then escorted to RHU. *Id.*, ¶ 35.

On November 8, 2018, the plaintiff was released from RHU to general population. He was interviewed by defendant Counselor Supervisor Thibeault. During the interview, she threatened disciplinary action if the plaintiff continued to pursue his PREA complaint. She also stated that she would not pass the issue up the chain of command. If the plaintiff wanted to pursue it, he would have to start over by contacting the PREA hotline. *Id.*, ¶ 36. Defendant Thibeault also questioned the plaintiff about the 2012 incident at MacDougall and told him that the investigation was never completed. *Id.*, ¶ 37.

The plaintiff brought his complaints to Lieutenant Ouelette, defendant Warden Murphy, and others. In late November/early December, the plaintiff was brought to an interview room. Defendant Murphy participated in the meeting by phone. In the presence of several supervisory officials and staff members, defendant Murphy questioned the plaintiff about the Willard incident. *Id.*, ¶ 38. At the conclusion of the session, defendant Murphy said that the issue was not their responsibility as it occurred at a different correctional facility. *Id.*, ¶ 39. The plaintiff also was threatened with future disciplinary action. *Id.*, ¶ 40. The defendants confirmed that the investigation of his 2012 PREA complaint had not been completed. *Id.*, ¶ 41.

The plaintiff has requested preservation of relevant video surveillance footage, with mixes responses. *Id.*, ¶ 42. On January 3, 2019, he called the Connecticut State Police PREA

hotline. *Id.*, ¶ 43. A state trooper was supposed to come to Robinson to interview the plaintiff. *Id.*, ¶ 44. The plaintiff was called to "the front." He expected to find a state trooper but, instead, was confronted by several correctional staff members who told him that the PREA interview was cancelled and ordered him not to call the hotline again. *Id.*, ¶ 45. The plaintiff received additional threats of disciplinary action, including loss of good time credit and RHU placement, for calling the hotline. *Id.*, ¶ 46.

II.   Analysis

The plaintiff names seven defendants in his complaint: the Commissioner of Correction, the Warden at MacDougall, the Warden at Willard, Correctional Counselor Aubey, Warden Murphy, Counselor Supervisor Thibeault, and Correctional Officer Maldonado. All defendants are named in individual and official capacities. The plaintiff asserts claims for deliberate indifference to safety, threats, and denial of a legal call. The complaint also may be construed to assert a claim for retaliation.

   A.   Supervisory Liability

The plaintiff alleges in conclusory fashion, that the Commissioner failed to ensure that staff strictly followed the PREA and defendant Warden at Willard failed to properly supervise staff to protect the plaintiff's right to report staff violations of the law.

> To state a claim for supervisory liability, a plaintiff must establish that: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring."

5

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

The plaintiff fails to allege facts suggesting that the Commissioner was aware of any PREA violations or that the Warden at Willard was aware of improprieties by his staff. Thus, the plaintiff fails to state cognizable claims for supervisory liability against them. The claims against the Commissioner and the Warden at Willard are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

B. <u>Deliberate Indifference to Safety</u>

The plaintiff alleges that defendant Warden at MacDougall failed to follow the PREA and ensure the safety of inmates, like the plaintiff, who are at serious risk of sexual assault. He also alleges that defendant Maldonado violated his right to be free from a sexually hostile environment.

To state a claim for deliberate indifference to safety, the plaintiff must show that the alleged conduct was sufficiently serious and that the defendant acted with a sufficiently culpable state of mind, that is, he acted maliciously and sadistically to cause the plaintiff harm. *See Orr v. Marquis*, No. 3:18-CV-1908(MPS), 2019 WL 161504, at *3 (D. Conn. Jan. 10, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The defendant must have been aware of, and deliberately disregarded, an excessive risk to the plaintiff's health or safety. *Id.* (citations omitted). When evaluating a claim for deliberate indifference to safety, the court considers "the facts and circumstances of which the official was aware at the time he acted or failed to act." *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks

and citation omitted).

The only allegations relating to MacDougall are the 2012 threats and assault by Cobbs. The plaintiff includes no facts suggesting that the Warden could have known that Cobbs would assault the plaintiff. Thus, the allegations are insufficient to support a claim against the Warden at MacDougall for deliberate indifference to safety.

The plaintiff also alleges that the PREA investigation into the incident at MacDougall was not completed after his transfer. The plaintiff does not allege that the Warden knew about, or was responsible for, the incomplete investigation. Thus, this allegation would not state a claim for supervisory liability against the Warden at MacDougall.

Finally, the incident at MacDougall occurred in 2012, seven years before the plaintiff commenced this action. The limitations period for filing a section 1983 action is three years. *See Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994). As the plaintiff filed his complaint on January 18, 2019, any timely claim must be based on incidents occurring after January 18, 2016. Accordingly, any claim against the Warden at MacDougall also would be time-barred.

The plaintiff alleges that defendant Maldonado subjected him to a sexually hostile environment by staring at the inmates in the shower area. A claim that correctional staff engaged in sexual abuse or assault is cognizable as an Eighth Amendment violation. *See Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) (noting that a single incident of sexual abuse is of constitutional magnitude "if sufficiently severe or serious"); *but see Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 2015) (isolated incidents of sexual abuse, even those involving touching, do not violate Eighth Amendment). The plaintiff describes only one incident and does not allege sexual abuse or even touching. Thus, his allegations do not state a plausible Eighth

Amendment claim. *See, e.g., Trowell v. Theodarakis*, No. 3:18cv446(MPS), 2018 WL 3233140, at *3 (D. Conn. July 2, 2018) (allegations of sexual abuse with no physical contact between inmate and correctional officer do not state cognizable claim) (citing cases). As the plaintiff alleges only that defendant Maldonado looked at inmates in the shower area on one occasion, he fails to state a cognizable claim.

Nor are the allegations against defendant Maldonado cognizable as a claim for violation of the PREA. The PREA was enacted to address the issue of rape in prison. It does not provide any specific rights to prisoners. *See Abrams v. Erfe*, No. 3:17-CV-1570(CSH), 2018 WL 691714, at *16 (D. Conn. Feb. 2, 2018) ("PREA does not create a private right of action for [prisoners]") (citing cases). The claim against defendant Maldonado is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

C. Threats

The plaintiff alleges that defendant Thibeault threatened him at Robinson, causing him to suffer mental pain and anguish. He also alleges that defendant Aubey threatened him at Willard and issued a false disciplinary report. Verbal harassment and threats do not rise to the level of a constitutional violation. *See, e.g., Holland v. City of New York*, 197 F. Supp. 3d 529, 546 (S.D.N.Y. 2016) (verbal threat without more insufficient to state claim under section 1983) (citing cases); *Ruffino v. Murphy*, No. 3:09-cv-1287(VLB), 2010 WL 1444562, at *4 (D. Conn. Apr. 12, 2010); (allegations of verbal abuse and threats, unaccompanied by physical injury or damage, are not cognizable under section 1983); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007) (holding that verbal harassment and threats, regardless of how inappropriate, unprofessional or reprehensible, do not violate a federally protected right and are not cognizable

under section 1983). The plaintiff alleges no facts suggesting any associated physical injury. Thus, his claim for threats is not cognizable in this action.

A claim for issuance of a false disciplinary report also is not cognizable under section 1983. "A false disciplinary report violated due process only where 'procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him. . . .'" *Myers v. Semple*, No. 4:18-CV-505, 2018 WL 3553336, at *5 (D. Conn. July 23, 2018) (quoting *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005)). As the plaintiff alleges no facts suggesting that he was denied due process in connection with the disciplinary charge, he cannot state a cognizable claim for issuance of an allegedly false disciplinary charge.

D. Retaliation

Although the claims against defendants Aubey and Thibeault are not cognizable as threats or issuance of false charges, the allegations support a claim for retaliatory conduct. To state a Section 1983 retaliation claim, the plaintiff must demonstrate "(1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." *Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012). Because retaliation claims are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts. Conclusory allegations of retaliatory conduct are not sufficient. *See Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) ("First Amendment retaliation claims brought by prisoners must 'be supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

9

Filing complaints and grievances is protected activity. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (filing a grievance is constitutionally protected activity and will support a retaliation claim). The plaintiff alleges that defendants Aubey, and Thibeault threatened him to get him to stop pursuing his PREA claim, and defendant Aubey issued a disciplinary report because he pursued the PREA claim. As making the PREA claims is protected activity, the plaintiff states plausible retaliation claims against defendants Aubey and Thibeault.

In addition, the plaintiff contends that defendant Murphy failed to supervise his staff thereby creating an environment hostile to the plaintiff's efforts to report abuse by staff. The plaintiff alleges that he wrote to defendant Murphy informing him of his complaints and that defendant Murphy participated in the meeting in late November/early December. Defendant Murphy questioned the plaintiff about the incident at Willard but stated that the issue was not their responsibility as it did not occur at Robinson. The Court has determined above that the plaintiff states a cognizable retaliation claim against defendants Aubrey and Thibeault for threatening the plaintiff if he continued to report the incident. As defendant Murphy was allegedly aware of these actions and did not intercede on the plaintiff's behalf, a supervisory liability claim will proceed against defendant Murphy.

E.  Denial of Access to the Courts

The plaintiff alleges that defendant Aubey denied him a legal call on November 2, 2018. It is well settled that inmates have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977)). Courts consider claims of denial of a telephone call to an attorney, outside the context of criminal proceedings, as claims for denial of access to the courts. *See McIntosh v. United States*,

No. 14-CV-7889(KMK), 2016 WL 1274585, at *23 (S.D.N.Y. Mar. 31, 2016).

The right of access to the courts "may not be unreasonably obstructed by the actions of prison officials." *Baker v. Weir*, No. 3:16-cv-166(JAM), 2016 WL 7441064, at *2 (D. Conn. Dec. 27, 2016) (citing *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986)); *see also City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008) ("constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress"). To state a claim for denial of access to the courts, the plaintiff must show that he suffered an actual injury as a result of the conduct of the defendants. *Id.* at 351-55. To establish an actual injury, the plaintiff must allege facts showing that the defendant took actions or was responsible for actions that "deprived him … of an opportunity to press some nonfrivolous and arguable legal claim in court." *Brown v. Choinski*, No. 09-cv-1631(MRK), 2011 WL 1106232, at *5 (D. Conn. Mar. 23, 2011).

The plaintiff alleges that he was denied a legal call on one occasion. He does not allege that he was unable to call his attorney at another time or that he could not communicate with his attorney in writing. Nor does he allege that the denial of this one call prejudiced a legal claim in any way. As the plaintiff has not alleged facts demonstrating an actual injury as a result of the denial of one phone call, he fails to state a plausible claim for denial of access to the courts. *See Ramos v. Department of Corr.*, No. 3:15-cv-1444(VAB), 2016 WL 740394, at *2 (D. Conn. Feb. 24, 2016) (dismissing access to courts claim based on denial of request, on one occasion, to call attorney). The claim for denial of access to the courts is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

F.      Relief

The plaintiff seeks damages from the defendants but does not specify whether he seeks those damages from them in individual or official capacity. The Eleventh Amendment bars claims for damages against state officials in their official capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and the plaintiff has alleged no facts suggesting that Connecticut has waived this immunity. Accordingly, any claims for damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

The plaintiff also seeks a declaration that the defendants violated his federal rights. Declaratory relief operates prospectively. It is intended to enable parties to adjudicate claims before either party suffers significant damages. *Orr v. Waterbury Police Dep't*, 2018 WL 780218, at *7 (D. Conn. Feb.8, 2018) (citations omitted). In *Orr*, the court dismissed the request for declaratory relief because the request related only to past actions; the plaintiff had not identified any legal issue that could be resolved by declaratory relief. *Id.* As the plaintiff seeks a declaration regarding past actions, the request for declaratory relief is inappropriate[1] and dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Finally, the plaintiff seeks an injunction ordering the defendants to stop threatening and intimidating him and to stop denying him access to his attorney through legal calls. As the Court

---

[1] The Court notes that if the plaintiff were to prevail on any of his claims, a judgment in his favor would serve the same purpose as a declaration that the defendants had violated his rights regarding that claim. Thus, any request for declaratory relief is redundant. *See U.S. v. $2,350,000.00 in Lieu of One Parcel of Property Located at 895 Lake Avenue Greenwich, Connecticut,* 718 F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if property is not forfeited, receiver-claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant).

has dismissed the claims for threats and denial of access to the courts, the plaintiff's request for injunctive relief is denied as moot.

III.     Conclusion

All claims against defendants Commissioner, Warden at MacDougall, Warden at Willard, and Correctional Officer Maldonado as well as the claims for denial of access to the courts and threats, and the requests for damages against the defendants in official capacity, declaratory relief, and injunctive relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b).  The case will proceed on the retaliation claims against defendants Aubey and Thibeault and the supervisory liability claim against defendant Murphy in their individual capacities only.

The Court enters the following orders:

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain the service or current work address for defendants Murphy, Aubey and Thibeault, mail a waiver of service of process request packet containing the Complaint to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of those waiver requests on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** send the plaintiff a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the amended complaint, either an

13

answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with

the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** this 25th day of February 2019 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge